UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURICE WILLIAMS #252766,

       Plaintiff,                                    Hon. Jane M. Beckering

v.                                                     Case No. 1:21-cv-446

KURTIS HAWN, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility, filed a complaint against Defendant Corrections Officer Kurtis Hawn on June 1, 2021, alleging claims of retaliation based on events that occurred from June 2020 to December 2020, while Plaintiff was incarcerated at the Ionia Correctional Facility (ICF). (ECF No. 1.) On March 4, 2022, I granted in part Plaintiff's motion for leave to file a supplemental complaint and granted Plaintiff's separate motion for leave to file an amended and a supplemental complaint. (ECF No. 21.) Pursuant to the March 4, 2022 Order, Plaintiff was permitted to add a post-complaint retaliation claim against Defendant Hawn, a pre-complaint retaliation claim against added-Defendant Corrections Officer Jon Nehf, and a post-complaint retaliation claim against added Corrections Officer Hector Ortiz, all of which arose out of ICF.

      Now before me is Defendants' Motion for Summary Judgment and Corrected Motion for Summary Judgment (ECF Nos. 54 and 57), pursuant to which they argue that Plaintiff failed to exhaust his retaliatory misconduct claims against Defendants Hawn and Ortiz and that all of Plaintiff's claims otherwise fail on the merits. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motions be **GRANTED IN PART AND DENIED IN PART**.

## I. Background

This action includes the following six retaliation claims.

### A. June 19, 2020 Claim against Hawn

Plaintiff alleges that he filed a grievance against non-Defendant Property Room Officer Mawer on June 15, 2020. Four days later, on June 19, 2020, while passing out breakfast trays, Hawn looked directly at Plaintiff and said, "I heard about that grievance you wrote on my buddy Mawer, you ain't getting a tray until you stop writing all those fu_ _ ing grievances." (ECF No. 22 at PageID.198–99.) Plaintiff filed a Step I grievance against Hawn for this incident on June 23, 2020. (ECF No. 55-3.)

### B. October–November 2020 Claim against Nehf

Plaintiff filed grievances against ICF staff on July 6, 7, and 16, 2020, alleging tampering with his mail and acts of retaliation. (*Id.* at PageID.199.) On August 19, 2020, Plaintiff made three phone calls to his family in which he stated that non-Defendant Corrections Officer Sheldon was sexually harassing him and had withheld his breakfast and lunch trays that same day. Plaintiff instructed his family to file a third-party Prison Rape Elimination Act complaint against Sheldon on the MDOC's website. (*Id.*) On August 24, 2020, Defendant Nehf told Plaintiff, "You're really starting to piss a lot of people off with all these grievances you been filing. Keep it up and you wont [sic] be eating, showering, or going to yard. And all that crying you've been doing on the phone to mommy isn't gonna help you one bit." (*Id.* at PageID.199–200.)

On October 28, 2020, Plaintiff tested positive for COVID-19 and was transported to the designated unit for quarantine. Before he left, Nehf told him, "Have fun on quarantine you little rat. And you might as well kiss your property good-bye because you'll never see it again." When Plaintiff returned to his cell in late November, he discovered that most of his allowable personal property was missing. He alleges that multiple prisoners told him they saw Nehf give his property

2

to other prisoners. (*Id.* at PageID.200.) Plaintiff filed a grievance regarding his missing property on December 1, 2020. (ECF No. 55-5 at PageID.489.)

### C.     December 13, 2020 Claim against Hawn

Plaintiff alleges that on December 13, 2020, Hawn deprived him of his lunch tray. After passing out the trays, Hawn said, "Hey Williams, you hungry? You better not write any more grievances on Nehf, or you're gonna be real hungry." (ECF No. 22 at PageID.200.) Plaintiff filed a grievance about this incident on December 14, 2020. (ECF No. 55-7 at PageID.498.)

### D.     December 20, 2020 Claim against Hawn

Plaintiff alleges that Hawn deprived him of his lunch tray again on December 20, 2020. He alleges that after passing out the lunch trays, Hawn stated, "Didn't I tell you to stop writing grievances? So why the f_ _k did you write that grievance on me last week? I guess you're gonna have to learn the hard way." (ECF No. 22 at PageID.201.) Plaintiff filed a grievance against Hawn about this incident on December 21, 2020. (ECF No. 55-8 at PageID.504.)

### E.     July 9, 2021 Claim against Hawn

Plaintiff's initial complaint in this action was filed on or about June 1, 2021. Plaintiff alleges that Hawn and his coworkers immediately became aware of the lawsuit and immediately began harassing and retaliating against Plaintiff while making comments about the lawsuit. (ECF No. 22 at PageID.201.) Plaintiff alleges that on June 7, 2021, he learned that his "legal Gore-Tex box," which contained the "mass majority of his 'legal work,'" was missing. He immediately filed a Step I grievance concerning the issue "with no success." (*Id.* at PageID.201–02.) On July 9, 2021, Defendant Hawn wrote Plaintiff a misconduct ticket for Disobeying a Direct Order. (*Id.* at PageID.202.) Hawn wrote in the misconduct ticket that after picking up the breakfast trays, he noticed that Plaintiff had covered his cell door window with "state issued blues." Hawn reported that he gave Plaintiff a direct order to remove the item from his window, but Plaintiff responded,

3

"Get away from my window." Hawn wrote the ticket after he noticed Plaintiff's failure to comply with his order. (ECF No. 55-9 at PageID.508.) Following a hearing a few days later, the hearing officer found Plaintiff guilty of Disobeying a Direct Order and imposed a sanction of 28 days' loss of privileges. (*Id.* at PageID.507.) Plaintiff alleges that, at the time Hawn wrote the misconduct ticket, he told Plaintiff, "Well, I guess you wont [sic] be filing any more lawsuits now that all of your legal shit has been thrown in the trash." (ECF No. 22 at PageID.202.)

      **F.**      **July 25, 2021 Claim against Ortiz**

On July 25, 2021, Defendant Ortiz issued Plaintiff a misconduct ticket for Destruction or Misuse of Property. (*Id.*; ECF No. 55-12 at PageID.529.) Ortiz wrote that as he approached Plaintiff's cell, he observed that that the window on the door was covered in a combination of state thermals and paper. Ortiz said that he knocked on the cell door and yelled in a loud voice for Plaintiff to remove the materials from the window, but Plaintiff did not respond. Ortiz reported that Plaintiff was currently on "State Blues" restriction for the same type of behavior. (*Id.*) On July 30, 2021, following a hearing on the misconduct ticket, the hearing officer found Plaintiff guilty of the charge and imposed a sanction of 21 days' loss of privileges. (*Id.* at PageID.528.)

Plaintiff alleges that at the time he issued the misconduct ticket, Ortiz stated, "Hey Williams, I heard about all those grievances you been filing and that lawsuit you filed on Hawn, and how you got him kicked out [sic] the unit. You're gonna pay for that you little snitch. You aint nothing but a little fuckboy, and were gonna make sure that you don't file anymore lawsuits, you little rat. You're gonna be on paper restriction real soon." (ECF No. 22 at PageID.202–03.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.  Discussion

#### A.  Exhaustion of Administrative Remedies

Defendants first contend that Plaintiff's retaliatory misconduct claims against Hawn and Ortiz are subject to dismissal without prejudice because Plaintiff failed to exhaust his administrative remedies for those claims.

5

The Supreme Court has held that a prisoner properly exhausts a claim for purposes of 42 U.S.C. § 1997e(a) by complying with the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Jones v. Bock*, 549 U.S. 199 (2007), the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Id.* at 218.

Generally, a prisoner incarcerated with the MDOC must "pursue a grievance through all three steps of the grievance process [set forth in MDOC Policy Directive 03.02.130]." *Weatherspoon v. Strahan*, No. 18-2210, 2019 WL 5306842, at *1 (6th Cir. June 4, 2019). Because Plaintiff's claims are based on the alleged retaliatory issuance of Class II misconduct tickets, however, he was required to exhaust his claims by raising the issue of retaliation during the misconduct hearings. *See Smith v. Goulet*, No. 1:17-cv-618, 2018 WL 3688468 at *2 (W.D. Mich. Aug. 3, 2018) ("Because the ordinary grievance procedure does not apply to disputes arising out of misconduct hearings, the prisoner must instead raise the issue in the misconduct hearing."); *Miller v. Klee*, No. 17-11006, 2018 WL 1354473 at *5 (E.D. Mich. Feb. 23, 2018) (stating that "a prisoner claiming that the issuance of a misconduct ticket constitutes retaliation, must raise that issue during the first misconduct hearing in order to exhaust administrative remedies"); *Alexander v. Ojala*, No. 2:16-cv-85, 2016 WL 6662559, at *3 (W.D. Mich. Sept. 23, 2016), *report and recommendation adopted*, 2016 WL 6659133 (W.D. Mich. Nov. 10, 2016) (concluding that the plaintiff could only exhaust his retaliation claim for minor misconduct ticket by asserting the claim during his misconduct hearing.). In addition, after raising the issue during the hearing, a prisoner must file an appeal based on retaliation. *See Johnson v. Newcomb*, No. 2:19-cv-93, 2020 WL

9311855, at *3 (W.D. Mich. May 1, 2020), *report and recommendation adopted*, 2021WL 940590 (W.D. Mich. Mar. 12, 2021) (citing Mich. Dep't of Corrs. Policy Directive 03.03.105 ¶¶ UUU–XXX). Therefore, Plaintiff was required to exhaust his retaliation claims by raising them in the misconduct hearings.

As an initial matter, Plaintiff correctly notes that he could not have exhausted his retaliatory misconduct ticket claims against Defendants Hawn and Ortiz before filing this action because they arose after Plaintiff filed his initial complaint. Nonetheless, the exhaustion requirement applies to all claims, including those filed pursuant to a supplemental complaint. *See Durham v. Mohr*, No. 2:14-cv-581, 2015 WL 5244464, at *11 (S.D. Ohio Sept. 9, 2015) (noting that "supplemental claims not only must be linked to the original claims, but they also must have been completely exhausted through all steps of the prison's grievance procedure in accordance with the Prison Litigation Reform Act's mandatory exhaustion requirement" (citing 42 U.S.C. § 1997e(a)); *Imelmann v. Michigan Dep't of Corrs.*, No. 12-CV-10671, 2012 WL 2917514, at *1 (E.D. Mich. July 17, 2012) (stating that supplemental claims are subject to the PLRA's mandatory exhaustion requirement). Therefore, if not properly exhausted, Plaintiff's retaliatory misconduct claims must be dismissed without prejudice.

Citing the misconduct hearing reports for the two alleged retaliatory misconduct tickets, Defendants Hawn and Ortiz contend that Plaintiff could not have raised the issue of retaliation during the misconduct hearings because the hearing reports reflect that Plaintiff refused to participate in the hearings. (ECF No. 55 at PageID.448–49 (citing ECF No. 55-9 at PageID.507 and ECF No. 55-12 at PageID.528).) Plaintiff does not argue that the hearing reports are inaccurate or that he actually raised the issue of retaliation at the misconduct hearing. He argues, however, that he grieved Defendants for fabricating false misconduct reports for engaging in protected

7

conduct. (ECF No. 58 at PageID.545–46.) As set forth above, and as succinctly stated in *Riggins v. Cook*, No. 2:20-CV-110, 2022 WL 816662 (W.D. Mich. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 815282 (W.D. Mich. Mar. 17, 2022), "when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct, the inmate must raise the issue during the initial misconduct hearing," *id.* at *4 (citing *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011)), and in the case of a "Class II or III misconduct, he or she must file an appeal based on retaliation." *Id.* (citing *Rush v. Newcomb*, No. 2:18-cv-23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019), and Mich. Dep't of Corrs. Policy Directive 03.03.105 ¶¶ UUU-XXX)). Accordingly, because Plaintiff failed to raise the issue of retaliation during the hearings on the misconduct tickets, he failed to exhaust his retaliatory misconduct claims.

Accordingly, I recommend that the Court grant the exhaustion portion of Defendants' motion and dismiss the retaliatory misconduct claims against Defendants Hawn and Ortiz without prejudice.

      **B.    Merits**

A plaintiff must prove the following elements to establish a prima facie case of retaliation: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To satisfy the causal connection requirement, the plaintiff must show that the defendant's retaliatory motive was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, __ U.S. __, 139 S. Ct. 1715, 1722 (2019).

8

### 1. Defendant Hawn

As set forth above, Plaintiff alleges that Defendant Hawn retaliated against him on three occasions—June 19, 2020, December 13, 2020, and December 20, 2020—by withholding a single meal from Plaintiff on each date. Hawn contends that Plaintiff's retaliation claims fail on the second element.[1]

First, to the extent that Defendant Hawn contends he is entitled to summary judgment because the evidence shows that he did not deprive Plaintiff of meals on the three dates in question, but instead, Plaintiff refused food trays on those dates, the argument lacks merit. Plaintiff's allegations in his verified amended and supplemental complaint, as well as the declarations from prisoners Terrell and Arrington that Plaintiff attached to his response (ECF Nos. 58-1 and 58-2), create a disputed issue of fact as to whether Hawn withheld food trays on those dates. Hawn's related argument—that withholding of an isolated meal does not rise to the level of an adverse action—does have merit and supports summary judgment on those three retaliation claims.

Courts within this district have held that missing a single or occasional meal does not amount to adverse action sufficient to sustain a First Amendment retaliation claim. *See Lee v. Richardson*, No. 1:13-cv-329, 2016 WL 5389814, at *6 (W.D. Mich. Aug. 8, 2016), *report and recommendation adopted*, 2016 WL 5372293 (W.D. Mich. Sept. 26, 2016) ("The denial of occasional meals does not amount to adverse action sufficient to support a retaliation claim."); *Oliver v. Parkkila*, No. 2:12-cv-292, 2013 WL 5330208, at *3 (W.D. Mich. Sept. 23, 2013) (stating that "the deprivation of one meal is insufficient to constitute adverse conduct for purposes of

---

[1] Defendants also state that Plaintiff's retaliation claims against Hawn fail on the third element (ECF No. 55 at PageID.449), but their argument is limited to disputing Plaintiff's claims on the second element. In any event, I conclude that Plaintiff's allegations in his verified amended and supplemented complaint (ECF No. 23), as well as the declarations from prisoners Terrell and Arrington that Plaintiff attached to his response (ECF Nos. 58-1 and 58-2), create a disputed issue of fact regarding a causal connection.

stating a retaliation claim"); *Ivory v. Bastian*, No. 2:10-cv-299, 2011 WL 766531, at *7 (W.D. Mich. Feb. 25, 2011) (the plaintiff's allegation that the defendant deprived him of an occasional meal in retaliation for grievance activity did not amount to adverse action); *Jackson v. Pelkola*, No. 2:08-cv-20, 2009 WL 6849445, at *3 (W.D. Mich. Oct. 29, 2009), *report and recommendation adopted*, 2010 WL 3609513 (W.D. Mich. Sept. 13, 2010) (denial of a single meal not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct). District courts elsewhere have reached the same conclusion. *See Moore v. Liewert*, No. 20-cv-11144, 2022 WL 6576947, at *4 (E.D. Mich. July 22, 2022), *report and recommendation adopted*, 2022 WL 4117018 (E.D. Mich. Sept. 9, 2022) ("Denial of a single meal is not enough to sustain a retaliation claim."); *Ramey v. Marsh*, 4:21-CV-1018, 2022 WL 363854, at *3 (M.D. Pa. Feb. 7, 2022) ("Withholding a meal on a single occasion likely does not rise above the *de minimis* level to implicate an actionable constitutional violation."); *Hill v. Williams*, 1:18-cv-48, 2021 WL 7561615, at *6 (E.D. Ark. Oct. 19, 2021), *report and recommendation adopted*, 2022 WL 855346 (E.D. Ark. Mar. 21, 2022) (finding that missing one meal tray is insufficient to deter a person of ordinary firmness from exercising his First Amendment rights); *Walker v. Senecal*, No. 9:20-CV-82, 2021 WL 3813081, at *7 (N.D.N.Y. July 19, 2021), *report and recommendation adopted*, 2021 WL 3793771 (N.D.N.Y. Aug. 26, 2021) ("Courts have repeatedly held that occasional deprivations of food are de minimis and do not rise to the level of adverse actions for purposes of a retaliation claim." (internal quotation marks omitted)); *Fann v. Arnold*, No. 14-CV-6187, 2016 WL 2858927, at *1 (W.D.N.Y. May 16, 2016) (affirming prior decision that denial of one meal does not constitute adverse action and noting the absence of contrary authority); *Rodgers v. Martin*, No. 1:12-cv-1686, 2015 WL 1565359, at *7 (E.D. Cal. Apr. 8, 2015) ("[T]he Court finds the denial of

Plaintiffs evening meal on a single occasion too de minimis to chill a person of ordinary firmness.").

In this action, Plaintiff was denied a total of three meals over six months, each one in response to a separate grievance that Plaintiff filed against Hawn or one of his colleagues. Considered together, Hawn's alleged withholding of food trays (while inappropriate) constitutes no more than occasional denial of meals that, as set forth above, courts have found does not amount to adverse action for purposes of a retaliation claim. *See Snyder v. McGinnis*, No. 03-CV-0902, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) ("But even if the Court were to assume that the denial of food to the plaintiff on two occasions constituted acts of retaliation, the Court finds that the actions complained of were de minimis and not actionable; such actions, even if proven at trial, would not chill a person of ordinary firmness from continuing to engage in First Amendment activity."); *compare Bryant v. Miller*, No. 9:18-CV-494, 2019 WL 5273210, at *16 (N.D.N.Y. June 18, 2019), *report and recommendation adopted*, 2019 WL 4267376 (N.D.N.Y. Sept. 10, 2019) (finding that allegation of denial of over 2,000 nutritionally adequate meals amounted to more than de minimis action).

Plaintiff's reliance on *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), is misplaced. First, the protected conduct portion of the court's opinion is not relevant here, as Defendants have not argued that the grievances that Plaintiff cites to support his retaliation claims against Hawn were frivolous. The court found that the plaintiff's complaint that he had not received a full serving of food was not frivolous because the plaintiff was pursuing a grievance about prison conditions. *Id.* at 264–65. The adverse action portion of the court's opinion also does not support Plaintiff's claim. The plaintiff in *Maben* alleged that the alleged adverse action was a Class II misconduct ticket, not the deprivation of a meal. In deciding whether the issuance of a Class II misconduct ticket

11

amounted to more than de minimis action, the court focused on both the potential punishment and the actual punishment he received and found that the deprivation of privileges constituted more than de minimis action. *Id.* at 266–67. *Maben* thus does not address whether the adverse action at issue in this case amounts to more than de minimis action.

Accordingly, I recommend that the Court grant Defendants' motion with regard to Plaintiff's meal-deprivation retaliation claims against Defendant Hawn.

### 2. Defendant Nehf

Defendant Nehf contends that he is entitled to summary judgment because Plaintiff has no personal knowledge of who stole or gave away his personal property. Nehf denies taking Plaintiff's personal property in October or November 2022 (ECF No. 55-4 at PageID.483), and he points out that no receipt or log book exists showing an inventory or disposition of Plaintiff's property during that time. (ECF No. 55 at PageID.461 (citing ECF No. 55-13 at PageID.533).) Nehf further argues that during the grievance process, Plaintiff's filings were inconsistent, as he identified Nehf at Step I as the person who gave his property away and no longer blamed Nehf in his Step III grievance. (*Id.* at PageID.461–62.) Notwithstanding these arguments, Plaintiff has presented a declaration from prisoner DeMaro Horne, who claims that on October 28, 2020, he heard Nehf tell Plaintiff that he could kiss his property good-bye and would never see it again as a consequence for his grievance activity. Horne further states that he subsequently observed Nehf give Plaintiff's property away to two unknown prisoners. (ECF No. 58-4 at PageID.565–66.)

Nehf does not argue that Plaintiff failed to properly exhaust his administrative remedies on his retaliation claim, nor does he even acknowledge or explain why the Horne declaration does not provide the evidence he claims Plaintiff lacks. Contrary to Nehf's arguments, the Horne declaration constitutes sufficient evidence to create a genuine issue of material fact as to whether

Nehf gave Plaintiff's property away. Nehf's declaration denying that he gave away Plaintiff's property and his citation to inconsistencies in Plaintiffs' Step I, II, and III grievances are not enough to overcome the Horne declaration and warrant summary judgment.

Therefore, I recommend that Defendants' motion be denied as to Plaintiff's retaliation claim against Defendant Nehf.

### 3. Qualified Immunity

Defendants also raise the defense of qualified immunity. In light of the foregoing recommendations regarding Plaintiff's retaliatory misconduct ticket claims and his deprivation-of-meal claims against Defendant Hawn, there is no need to address the qualified immunity as to those claims. As for the claim against Defendant Nehf, I conclude that qualified immunity should be denied.

The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a

clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

As discussed above, an issue of fact remains as to whether Nehf retaliated against Plaintiff for his grievance activity by giving Plaintiff's property to other prisoners. The filing of a prisoner grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation, and that right was clearly established. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Accordingly, Nehf is not entitled to qualified immunity on Plaintiff's claim.

### 4. Eleventh Amendment Immunity

Last, Defendants contend that Plaintiff's official capacity claims are barred by the Eleventh Amendment. I agree.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). An official capacity suit is thus no different than a suit against the state itself. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit

14

against an individual in his official capacity is the equivalent of a suit against the governmental entity."). Because the Eleventh Amendment prohibits suits for damages against states in federal court, see *Quern v. Jordan*, 440 U.S. 332, 342 (1979), damage claims against state officials in their official capacities are also barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)).

Here, Plaintiff's official capacity claims are clearly barred. Although Plaintiff notes that he is suing Defendants for injunctive relief, his requested relief is against "the MDOC to immediately transfer Plaintiff Williams to level 2." (ECF No. 22 at PageID.205.) The MDOC is not a party to this action and, as set forth above, the Eleventh Amendment would bar such relief. Moreover, Plaintiff's claims are retaliation claims for which Plaintiff seeks damages. There is no basis for injunctive relief against the individual Defendants, nor does Plaintiff suggest a logical factual link between his retaliation claims and his request that he be transferred to a level II placement.

Therefore, the official capacity claims should be dismissed.

### IV.  Conclusion

For the reasons set forth above, I recommend that Defendants' motion for summary judgment (ECF Nos. 54 and 57) be **granted in part and denied in part as follows**: (1) the retaliatory misconduct claims against Defendants Hawn and Ortiz be **dismissed without prejudice** for lack of exhaustion; (2) the denial-of-meal claims against Hawn be **dismissed with prejudice**; and (3) the motion be **denied** with regard to the retaliation claim against Defendant Nehf.

Dated: January 19, 2023    /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).